# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

|  |  |
|---|---|
| THE CHRISTIAN MINISTERIAL ALLIANCE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ASA HUTCHINSON, et al., <br><br> Defendants. | Civil Case No. 4:19-cv-402-JM |

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF SCHEDULED TRIAL DATE, EXPEDITED BRIEFING, AND A CONFERENCE

Plaintiffs, Christian Ministerial Alliance, Marion Humphrey, Kymara Hill Seals and Arkansas Community Institute, (collectively, "Plaintiffs"), respectfully request reconsideration of the rescheduled trial date. Fed. R. Civ. P. 16(b), 40; L. R. 7.5. Given the urgency and impending deadlines, Plaintiffs also request expedited briefing, if the Court finds it necessary pursuant to Local Rule 7.2(b).

The postponement of the trial date, from January 18 to April 25, 2022, irreparably harms Plaintiffs by foreclosing an opportunity for Black voters to elect a candidate of their choice to seven seats for the Arkansas Court of Appeals and Supreme Court this year, nearly half of all appellate judicial seats. These seats currently have a candidate filing deadline of March 1, 2022, with elections scheduled on May 24, 2022. Absent court intervention, Black voters likely will not have an opportunity for a meaningful remedy until the next judicial election for these seven seats – in 2030. Plaintiffs propose alternatives to a protracted trial date, such as non-consecutive trial dates, that may allow for the resolution of this case ahead of these deadlines while respecting

important COVID-19 health and safety concerns. In the alternative, given the recent change in the trial date, Plaintiffs will likely need to seek emergency relief before March 1, 2022.

## I.     BACKGROUND

Arkansas's dilution of Black voting power in appellate judicial elections is a result of the structure of those electoral methods: at-large voting for the Supreme Court, and districts that currently split Black votes for the Court of Appeals. Absent relief, those electoral methods will continue to preclude Black voters from meaningfully participating in appellate judicial elections, including the upcoming May elections.

Plaintiffs filed this case in June 2019 and trial was originally scheduled for August 24, 2020. ECF No. 32. The case has been prolonged, at least in part due to Defendants repeatedly seeking to delay deadlines, *see, e.g.*, ECF No. 40. Plaintiffs, on the other hand, have continually attempted to move this case to resolution, *see, e.g.*, ECF Nos. 35 and 41 (opposing motions to stay discovery); ECF No. 138 (opposing continuance). Nearly two-and-a-half years later, Plaintiffs were prepared, as they had been for some time, to go to trial on January 18, 2022, ECF No. 97, as were Defendants. Thirteen days before trial, Defendants stated they were "willing to go forward with the trial" as scheduled with certain COVID precautions. Email from Merritt to Mossman dated 1/5/2022 at 12:16 pm.  However, Defendants later changed course, stating that, in addition to COVID concerns, they were no longer prepared for trial. Email from Merritt to Mossman dated 1/5/2022 at 5:28 pm.

Understanding the seriousness of the COVID health concerns raised by Defendants, Plaintiffs sought to confer concerning a range of alternatives, including a brief continuance. After Defendants refused to speak with Plaintiffs, the parties submitted a joint report to the Court pursuant to Administrative Order Nineteen, in which Defendants requested a continuance. ECF

No. 138. Plaintiffs proposed "a variety of alternatives including additional safety precautions in the Courtroom, virtual appearances of counsel and witnesses, and even a brief continuance until late January, if the circumstances merit it." *Id.* ¶8. Plaintiffs also noted the upcoming judicial elections. *Id.* On January 7, the January 18, 2022 trial date was continued.

It now appears that trial will be delayed at least three months. The trial is currently set for April 25, 2022, but as Plaintiffs noted, that trial date may not be feasible given Plaintiffs' counsels' conflicting trial dates in other matters. Unless these other trial dates are suspended, Plaintiffs are facing a trial date in May or June at the earliest. *See* Email from Ms. Glenn to Counsel dated 1/10/22 at 4:09 pm ("If the April 25 date is a problem at this point, we will have to move it further out.").

## II. PROPOSED ALTERNATIVES TO DELAYED TRIAL DATE

Plaintiffs are sympathetic to the challenges of an in-person trial posed by the COVID-19 pandemic and the Omicron variant, as well as the health concerns for some of the Defense counsel's team. Indeed, all counsel and witnesses have been grappling with this health emergency and its collateral consequences. Plaintiffs also understand that the Court has its own schedule to keep—packed that much tighter because of the pandemic—and other litigants who are waiting to have their rights adjudicated. Given the time-sensitivity and significance of this case, Plaintiffs respectfully suggest that the below solutions would expedite trial within the constraints of the Court's calendar while addressing safety concerns:

*First*, the trial could occur over non-consecutive days as the Court's schedule allows. This may prove easier to schedule than a consecutive two-week period.

*Second*, the trial could be shortened to five or six days. Multiple witnesses are on Plaintiffs' witness list mostly, if not solely, to authenticate exhibits and the parties should be able to reach a resolution that eliminates the need for such testimony.[1]

*Third*, a remote trial for some, or all, proceedings would allow the parties to safely and reliably resolve this case. This Court has already issued an order permitting two witnesses to testify remotely. ECF No. 136. Counsel for Plaintiffs have participated in multiple virtual multi-week federal trials. And this district has held virtual full-day hearings with multiple counsel and witnesses.

These are just a few possibilities. Plaintiffs stand ready to work with Defendants and the Court to identify a way to hold a trial safely and efficiently before March 1 and would welcome a conference with the Court in the coming days to discuss these and other alternatives. These suggestions would allow for the trial to be safely held ahead of the March 1 deadline.

### III. PLAINTIFFS ARE IRREPARABLY HARMED BY THE TRIAL DELAY.

The current trial schedule irreparably harms Plaintiffs who have vigorously attempted to prosecute this case. The trial date forecloses any opportunity for Plaintiffs and Black voters to elect an appellate judicial candidate of their choice in May. Indeed, Plaintiffs are already prejudiced by the continuance of the January trial date as it pushes their opportunity for relief close to the March 1, 2022 filing deadline and any additional delay only compounds that harm.

---

[1] There remains no basis for Defendants' unwillingness to meet and confer regarding trial exhibits. *See* Email from Merritt to Mossman dated 12/10/2021 at 2:27 p.m. (refusing request to confer and taking the position that their own "[e]xhibits/exhibit lists" were "not due until the day of trial" and that any objections to exhibits would therefore have to be identified, raised, and resolved in the midst of trial); *see also* Email from Merritt to Mossman dated 12/17/2021 at 6:02 a.m.Plaintiffs inquired if certain testimony could come in through deposition designations to avoid non substantive witnesses and Defendants refused. Email from Merritt to Mossman dated 12/10/21 at 2:27pm.

Defendants cavalierly argue that the method of elections have been in effect for decades and further delay, or one more election, will not prejudice Plaintiffs and Black voters. ECF No. 138 ¶18. They are wrong. The dilution of Black votes in the May 24, 2022 judicial election constitutes irreparable injury necessitating immediate relief. "Federal courts have recognized that the holding of an upcoming election in a manner that will violate the Voting Rights Act constitutes irreparable harm to voters." *United States v. Berks Cnty.*, 250 F. Supp. 2d 525, 540 (E.D. Pa. 2003) (citing *Dillard v. Crenshaw Cnty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (enjoining defendants from conducting "any further elections that fail to comply with the Voting Rights Act")). Courts in the Eighth Circuit have straightforwardly applied this principle to find irreparable harm arising from vote dilution claims. *See, e.g.*, *Day v. Robinwood W. Comm. Improvement Dist.*, 2009 WL 1161655, at *3 (E.D. Mo. Apr. 29, 2009) ("These Plaintiffs are threatened with an irreparable harm because . . . their votes will be diluted in the upcoming . . . election.").

Four Court of Appeals seats are up for election on May 24, 2022, with a registration deadline of March 1, 2022. Ark. Code § 7-10-102(b)(1)–b(2)(B). Those seats are located in districts (Districts 1, 3, and 6) that currently have a white majority, and that have never in their history elected a Black judge. Under Mr. Cooper's proposed illustrative maps, (i) two counties in District 1 (Mississippi and Crittenden County) would be moved to a majority-Black district, and (ii) one of the counties in District 6 (Pulaski County, which by itself contains over 30% of the Black population in Arkansas)—will also be electing a Court of Appeals judge to serve an 8-year term. *See* PTX 73, Expert Decl. of William Cooper, at 21-27. In Plaintiffs' proposed maps, part of Pulaski County would be included in a second majority-Black district (District 8 in the Illustrative Plans), allowing voters to elect a candidate of their choice. *Id.* at 21-23. Absent relief from this Court before the May election, Black voters in what are currently District 1 and District 6 will be

Case 4:19-cv-00402-JM   Document 143   Filed 01/14/22   Page 6 of 9

deprived of the opportunity to elect the candidates of their choice. The next opportunity to cast a vote for those seats would be *eight years later* in 2030.

The same is true of the three Supreme Court seats that are up for election in May. Ark. Code § 7-10-102(b)(1)–(b)(2)(B). These elections will continue at-large under the current system, which as Plaintiffs have detailed in their filings, *see* ECF Nos. 88 and 103, denies Black voters an equal opportunity to elect their candidate of choice. It also directly impacts Black candidates' decisions to run for those seats. Again, absent relief from this Court before the May election, the election will be conducted at-large and with a registration deadline that presents a significant and unique burden on Black candidates deciding whether to run in the first place. The results of that election will remain in place for close to a decade. That cannot be right.

"[T]he right of qualified voters . . . to cast their votes effectively . . . rank[s] among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *see also Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). And the Supreme Court has specifically recognized that "the right of suffrage can be denied by [means of] dilution . . . just as effectively as by wholly prohibiting the free exercise of the franchise." *Williams*, 393 U.S. at 30. Courts in this Circuit have consistently considered the timing of judicial relief relative to an upcoming election a key component of irreparable harm. *See, e.g.*, *Pavek v. Simon*, 467 F. Supp. 3d 718, 754 (D. Minn. 2020) (finding a "clear and present need" for injunctive relief where court order might not "be implemented in time" for upcoming election). Here, the timing of the Supreme Court and Court of Appeals elections directly and immediately bears on Plaintiffs' opportunity to elect the candidates of their choice. That harm cannot be remediated by a later judicial action. Reconsideration of the trial date is therefore warranted.

6

Defendants will not be prejudiced by an earlier trial date. All dispositive motions in this case have been resolved. Defendants have had Plaintiffs' stipulations and exhibit list since December 1, 2021. And importantly, as of January 5, even after Administrative Order Nineteen, Defendants were prepared and "willing to go forward with the trial". ECF No. 138 at ¶ 5 (citing Email from Merritt to Mossman dated 1/5/2022 at 12:16 pm).[2] There is nothing remaining in this litigation besides trial.

If the election proceeds before trial under the current violative methods, then one of two undesirable outcomes will result. *First*, Black voters will have to wait until the end of the elected judges' eight-year terms to vote under new districts, denying them a timely remedy. *Second*, a special election would be ordered, and the newly elected judges ousted ahead of a fair election. Thus, Plaintiffs respectfully request moving up the trial date to avoid such a choice.

## IV. EXPEDITED BRIEFING AND A CONFERENCE

Under Local Rule 7.2(b), "the Court may by order shorten or lengthen the time for the filing of responses and replies." For the reasons above, Plaintiffs believe time is of the essence with respect to resolution of Plaintiffs' present motion. Defendants are very familiar with the issues and should have no trouble responding in a timely fashion. Accordingly, we respectfully request that the Court order Defendants to respond to this motion by Tuesday, January 18, 2022. Plaintiffs also request that the Court schedule a conference as soon as practicable to resolve this motion and discuss how a trial might be scheduled given the Court's and the parties' schedules.

---

[2] Finally, delays in the trial will also prejudice Plaintiffs' presentation of the case as the data relied upon will become outdated with more time. Plaintiffs' expert analyses were conducted in 2021, based on election data available up until that point. If the trial is continued past the 2022 election, then Plaintiffs may seek to re-open discovery to reflect the latest available data and facts surrounding relevant campaigns.

\*   \*   \*

In the absence of an earlier trial date Plaintiffs will likely need to seek emergency relief to remedy the violative electoral method ahead of the upcoming elections.[3] Without preliminary injunctive relief, the judicial method of elections will be in place for the 2022 election cycle during which elections will be held for nearly half of Arkansas's appellate judges. The challenged plans impermissibly dilute Black voting strength in violation of Section 2. Accordingly, Plaintiffs may seek preliminary injunctive relief prohibiting Arkansas from maintaining the dilutive plans for the 2022 election cycle and from failing to implement a plan that complies with Section 2.

Plaintiffs understand this is an uncommon procedural posture given discovery and dispositive motions have been completed. Plaintiffs attempted to avoid this posture and did not anticipate it when filing their case nearly three-years before the upcoming election. Nevertheless, given the recent continuance of the trial date, there appears to be no other options for Plaintiffs to obtain a timely remedy.

### V.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court reconsider the scheduled trial date, expedite briefing on their motion, and schedule a conference.

---

[3] This sort of expedited schedule ahead of upcoming elections to address a Section 2 violation is not uncommon. Indeed, in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, plaintiffs are challenging the recently implemented House districts for violating Section 2 of the Voting Rights Act. No. 4:21-cv-012339 (E.D. Ark.). The case was filed on December 29, 2021, and the plaintiffs have sought a preliminary injunction to prohibit the State from implementing the new House districting plan for the 2022 election cycle. *Id.* at ECF No. 3. The preliminary injunction hearing is scheduled for January 27, 2022. The Arkansas House of Representatives will hold its primary on June 21, 2022. Ark. Code Ann. § 7-7-203. The candidate filing period for the primary election runs from February 22, 2022, to March 1, 2022.

Dated: January 14, 2022

Respectfully submitted,

| | |
|---|---|
| Natasha Merle<br>Kristen Johnson<br>Victoria Wenger<br>Arielle Humphries<br>NAACP LEGAL DEFENSE &<br>   EDUCATIONAL FUND, INC.<br>40 Rector Street, 5th Floor<br>New York, NY 10006<br>Phone: (212) 965-2200<br>Fax: (212) 226-7592<br>nmerle@naacpldf.org<br>kjohnson@naacpldf.org<br>vwenger@naacpldf.org<br>ahumphries@naacpldf.org<br><br>Demian A. Ordway<br>Neil R. Lieberman<br>Eileen M. DeLucia<br>HOLWELL SHUSTER & GOLDBERG LLP<br>425 Lexington Ave.<br>New York, New York 10017<br>Telephone: (646) 837-5151<br>Fax: (646) 837-5150<br>dordway@hsgllp.com<br>nlieberman@hsgllp.com<br>edelucia@hsgllp.com | Michael Skocpol<br>NAACP LEGAL DEFENSE &<br>EDUCATIONAL FUND, INC.<br>700 14th Street, NW, Suite 600<br>Washington, DC 20005<br>mskocpol@naacpldf.org<br><br>Arkie Byrd<br>MAYS, BYRD & ASSOCIATES, PA.<br>212 Center Street<br>Suite 700<br>Little Rock, AR 72201Phone:<br>(501) 372-6303<br>Fax: (501) 399-9280<br>abyrd@maysbyrdlaw.com<br><br>Philip Urofsky<br>SHEARMAN & STERLING LLP<br>401 9th Street, NW, Suite 800<br>Washington, DC 20004<br>Phone: (202) 508-8000<br>Fax: (202) 508-8100<br>philip.urofsky@shearman.com<br><br>Rachel Mossman<br>SHEARMAN & STERLING LLP<br>2828 North Harwood Street, 18th Floor<br>Dallas, TX 75201<br>Phone: (214) 271-5777<br>Fax: (214) 271-5778<br>rachel.mossman@shearman.com<br><br>*Counsel for Plaintiffs* |